IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| JEREMY CHERRY and LOCAL 733 OF THE INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS | PLAINTIFFS |
| v. | CAUSE NO. 1:18CV88-LG-RHW |
| HUNTINGTON INGALLS INCORPORATED | DEFENDANT |

## MEMORANDUM OPINION AND ORDER REGARDING SUMMARY JUDGMENT MOTIONS

BEFORE THE COURT are the [42] Motion for Partial Summary Judgment filed by Plaintiff Jeremy Cherry, and the [44] Motion for Summary Judgment filed by Defendant Huntington Ingalls Inc. ("Ingalls"). Both Motions are fully briefed. The parties dispute application of a Mississippi statute limiting an employer's ability to fire an employee for transporting or storing a firearm in his or her automobile on company premises. After due consideration of the submissions and the relevant law, the Court concludes that Jeremy Cherry was wrongfully discharged. Accordingly, his Motion for Partial Summary Judgment is granted. Ingalls' Motion is granted in part and denied in part.

## BACKGROUND

In April 2016, Plaintiff Jeremy Cherry was employed by Ingalls as a cableman in the electrical department of its Pasacagoula shipyard, and a member of the Local 733 of the International Brotherhood of Electrical Workers. Cherry was on his way to work, driving on the access road leading to the main gate of the

construction area when a security officer pulled him over for speeding. A subsequent search revealed a pistol and ammunition clip in the glove box. Cherry was terminated for violation of company policy prohibiting firearms and other weapons on company property. He alleges his termination violated his written employment agreement and Mississippi Code § 45-9-55, which generally forbids an employer from establishing, maintaining, or enforcing "any policy or rule that has the effect of prohibiting a person from transporting or storing a firearm in a locked vehicle in any parking lot, parking garage, or other designated parking area." Miss. Code Ann. § 45-9-55(1).[1] Cherry's claims are for beach of employment

---

[1] The statute reads in full:

(1) Except as otherwise provided in subsection (2) of this section, a public or private employer may not establish, maintain, or enforce any policy or rule that has the effect of prohibiting a person from transporting or storing a firearm in a locked vehicle in any parking lot, parking garage, or other designated parking area.

(2) A private employer may prohibit an employee from transporting or storing a firearm in a vehicle in a parking lot, parking garage, or other parking area the employer provides for employees to which access is restricted or limited through the use of a gate, security station or other means of restricting or limiting general public access onto the property.

(3) This section shall not apply to vehicles owned or leased by an employer and used by the employee in the course of his business.

(4) This section does not authorize a person to transport or store a firearm on any premises where the possession of a firearm is prohibited by state or federal law.

(5) A public or private employer shall not be liable in a civil action for damages resulting from or arising out of an occurrence involving the transportation, storage, possession or use of a firearm covered by this section.

Miss. Code. Ann. § 45-9-55.

contract, breach of the duty of good faith and fair dealing, and negligent infliction of emotional distress. He seeks compensatory and punitive damages.

Local 733 alleges that Ingalls refused to "submit Cherry's termination through the grievance procedure set forth in the collective bargaining agreement" because "an arbitrator would have to interpret state law – an eventuality prohibited under the [Collective Bargaining Agreement]." (Compl. 3, 4, ECF No. 1.) Local 733 alleges the refusal was a breach of the CBA because the statute in question had already been interpreted by the Mississippi Supreme Court. Local 733 seeks an order requiring Ingalls to abide by the CBA and to submit Cherry's termination to arbitration.

## THE SUMMARY JUDGMENT MOTIONS

In his motion for partial summary judgment, Cherry argues that Ingalls' parking lot security measures did not qualify for the exception to § 45-9-55 so that Ingalls could enforce its weapons policy. Specifically, Ingalls did not maintain a security station or restrict or limit access to the access road or parking lot through the use of a gate or other barrier. Cherry contends that as a consequence, his termination violated Mississippi Code § 45-9-55, and he is entitled to a judgment on the issue of liability.

Ingalls moves for summary judgment on all claims. It argues first that it is entitled to judgment as a matter of law on Local 733's claim of breach of the CBA, because the Union has waived its right to require Ingalls to arbitrate the dispute. Ingalls also argues that the claim is not arbitrable because the arbitrator would

have to interpret the statute to determine if it gives an employee the right to possess a firearm on company property outside a parking lot.

Second, Ingalls contends it is entitled to judgment on Cherry's wrongful discharge claim because Mississippi Code § 45-9-55 does not apply to the facts of this case. Ingalls argues that the statute applies to locked vehicles in secured parking lots and does not extend to an employee's unlocked vehicle on an access road. Thus, Cherry could be discharged for possession of a firearm discovered in his unlocked car on an access road leading to a parking lot. Even if the facts of this case did fall within the statute, Ingalls contends that its parking lots have sufficient security to qualify for the exception, allowing it to forbid possession of firearms in employee's vehicles parked on the premises.

Following from its argument that it did not violate § 45-9-55 in discharging Cherry, Ingalls contends it is entitled to summary judgment on the remaining claims of breach of good faith and fair dealing, negligent infliction of emotional distress, and punitive damages. Ingalls also moves, in the alternative, for summary judgment regarding Cherry's claims for back pay during the period he was unable to work due to injuries.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact means that 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th

Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the evidence presented by the nonmovant "'is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 249). In deciding whether summary judgment is appropriate, the Court views the evidence and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

## ANALYSIS

1. <u>The Firearms Statute</u>

Mississippi Code § 45-9-55 was enacted in 2006 and has been applied only a handful of times. In 2015 the Fifth Circuit certified to the Mississippi Supreme Court the question of whether the statute created an exception to the employment at will doctrine.[2] The Mississippi Supreme Court responded that the statute did indeed create an exception. *Swindol v. Aurora Flight Scis. Corp.* (*Swindol II*), 194 So. 3d 847, 854-55 (Miss. 2016). The Fifth Circuit concluded that "the court was holding that the relevant cause of action for discharging someone in violation of this statute is the same as that already recognized for wrongful discharges under *McArn* [*v. Allied Bruce–Terminix Co.*, 626 So. 2d 603 (Miss. 1993)], namely, a tort action with the same categories of relief being available." *Swindol I*, 832 F.3d at 494. The

---

[2] The precise question certified was "[w]hether in Mississippi an employer may be liable for a wrongful discharge of an employee for storing a firearm in a locked vehicle on company property in a manner that is consistent with Section 45–9–55." *Swindol v. Aurora Flight Scis. Corp.* (*Swindol I*), 805 F.3d 516, 523 (5th Cir. 2015), certified question answered, 194 So. 3d 847 (Miss. 2016).

- 5 -

Fifth Circuit subsequently remanded cases in which district courts had held that an employer was immune from suit under § 45-9-55 and under Mississippi's at-will employment doctrine.

Ingalls does not contend that it is immune from Cherry's wrongful discharge claim. The relevancy of the *Swindol* opinions to this case therefore seems limited to general background. In any event, Cherry's wrongful discharge claim is based on Ingalls' alleged breach of the CBA by terminating him without cause, which has always been a valid basis under Mississippi law. *See Cmty. Care Ctr. of Aberdeen v. Barrentine*, 160 So. 3d 216, 217 (Miss. 2015) ("[W]rongful-discharge suits in Mississippi generally must be based upon written employment contracts.").

    *a) Cases Applying Mississippi Code § 45-9-55*

An early post-*Swindol I* case is *Parker v. Leaf River Cellulose, LLC*, in which the plaintiff was terminated after a firearm was discovered in his locked vehicle in "a parking area which has no gate, fence, or security station, and which 'is surrounded on all sides by roadways and open fields.'" No. 2:14CV9-KS-MTP, 2017 WL 2197130, at * 1 (S.D. Miss. May 18, 2017). At the parking area entrances, the employer had placed signs stating that the parking area was for use of employees and visitors to the business, and all weapons were prohibited. *Id.* The court found that the defendant had not shown that its parking area was restricted as described in § 45-9-55(2), and therefore "it was not entitled to prevent the plaintiff from storing his firearm in his locked vehicle under Mississippi law." *Id.* at *4.

In *Smith v. Huntington Ingalls Incorporated*, the court found questions of fact concerning whether the same Ingalls parking areas at issue in this case are restricted as described in § 45-9-55(2). 363 F. Supp. 3d 711 (S.D. Miss. 2019). The plaintiff had two "speed loaders" in plain view inside his locked vehicle parked in one of Ingalls' parking lots at the shipyard in Pascagoula. *Id.* at 712. He contended his subsequent termination was in violation of § 45-9-55. Ingalls argued that its no firearms policy was "enforceable because it 'restricts public access with no-trespassing signs, security patrols, and closed circuit cameras monitored in a central security station.'" *Id.* at 718.

The court reviewed the evidence of the parking restrictions and found that Ingalls had not shown it was entitled to summary judgment. The court questioned whether Ingalls' policy infringes on the rights of its employees under state law. "Ingalls' policy as applied arguably has the effect of precluding its employees from having firearms in their vehicles during [their] commutes, which in some cases may be quite long." *Id.* at 719 (citations omitted). Given that there was no screening of vehicles entering the parking lots but might be screening of employees as they actually entered the workplace, "the effectiveness of Ingalls' parking lot policy in achieving its stated goal of improving security seems questionable." *Id.* Summary judgment was denied because "at a minimum there are material fact questions for resolution at trial regarding whether Ingalls' policy, as applied by Ingalls in this case, resulted in Smith's wrongful termination."

In *McIntyre v. Calsonic Kansei North America, Inc.,* No. 3:16-cv-00886-HTW-LRA (S.D. Miss. Mar. 29, 2019) (ECF No. 122), the court examined a parking lot that used "the gates, the security station, signage, security patrols, video surveillance, a mechanical arm and, perhaps most importantly, a cyclone fence topped with barbed wire enclosing the entire property, including parking lot 1B." *Id.* at 24. This combination made the parking lot qualify as "sufficiently 'enclosed' within the meaning of § 45-9-55(2)." *Id.* The court noted that the parking lot in question was "the most limited or restricted parking lot that has been scrutinized to date under the provisions of Subsection 2 of § 45-9-55. None of the other facilities has been completely enclosed by a perimeter fence topped with barbed wire." *Id.* at 27.

    *b) Discussion*

Ingalls argues that subsection (1) of the statute bars an employer from prohibiting possession of a firearm but only "in a locked vehicle in any parking lot, parking garage, or other designated parking area." Because Cherry's vehicle was not locked and not in a parking lot, parking garage, or other designated parking area when the firearm was discovered, Ingalls contends that the statute did not apply to him. Ingalls argues it would be an improper expansion of the statute to apply it to Cherry's vehicle.

Ingalls' interpretation of the statute is incomplete. The entire sentence provides:

> Except as otherwise provided in subsection (2) of this section, a public
> or private employer may not establish, maintain, or enforce any policy

> or rule that *has the effect of prohibiting a person from transporting or storing a firearm* in a locked vehicle in any parking lot, parking garage, or other designated parking area.

Miss. Code § 45-9-55(1) (emphasis added). Ingalls' policy has the effect of prohibiting a person from transporting or storing a weapon in his or her vehicle. It would be impossible for an employee to arrive at one of Ingalls' parking lots without driving on an access road, and Ingalls' policy makes it a terminable violation for an employee to do so with a firearm in the vehicle. That is precisely what happened in this case – Cherry was prohibited from transporting his firearm to a parking lot, where it could be stored in his locked vehicle. Ingalls' reading of subsection (1) would make it apply only after the employee had driven through the property, parked in a parking lot, and locked his or her vehicle, when the language plainly applies to a policy that prevents an employee from reaching the parking lot in the first instance. Since Ingalls' policy has the effect of prohibiting transportation or storage of a firearm, the policy violates § 45-9-55 unless the exception of subsection (2) applies.

The exception provides:

> A private employer may prohibit an employee from transporting or storing a firearm in a vehicle in a parking lot, parking garage, or other parking area the employer provides for employees to which access is restricted or limited through the use of a gate, security station or other means of restricting or limiting general public access onto the property.

Miss. Code. Ann. § 45-9-55(2)

Both parties request summary judgment on the issue of whether the Ingalls parking lots qualify for this exception. Ingalls does not contend that its parking lots

are gated, or that it has manned, controlled access to its parking lots. Ingalls argues instead that the exception applies because its security department "uses a number of means to restrict public access to the parking lot where Cherry testified, he intended to park." (Ingalls Mem. 13, ECF No. 45.) These are: 1) no-trespassing signs; 2) constant security patrols of the parking lots and 3) a comprehensive system of closed-circuit cameras monitored in a central security station. (*Id.* at 13-14.)

Cherry argues that Ingalls has a fence around the perimeter of its property, but the parking lots are not enclosed, and Ingalls "maintained no security station and did not erect a gate or similar barrier to restrict public ingress or egress to its parking lots." (Cherry Mem. 14, ECF No. 43.)

The photos provided by Rick Graham, Ingalls Director for Security, show no-trespassing signs at the entrances of parking lots. The parking lots are separated from the adjacent road by a low fence consisting of one cable strung through short posts. This minimal type of fencing also serves as delineation within the parking areas, which are not paved and lack painted lines. (*See* Ingalls Mot. Ex. 1, at 49-58, ECF No. 48-1 (ECF pagination).)

There is no material factual dispute about the condition of Ingalls' parking lots; the parties argue about application of the statutory language to the facts. The Court finds the discussion in the *Parker* case most helpful in resolving this dispute.[3]

---

[3] Although the analysis in *Smith* concerned the same evidence and similar arguments, the court could only grant or deny Ingalls' summary judgment motion. It found that Ingalls could not show it met the requirements of the statute and left

In *Parker*, the employer maintained a parking area with no gate, fence, or security station. At the entrances to the parking area were signs stating that the parking area was for use of employees and visitors to the business, and all weapons were prohibited. 2017 WL 2197130, at *1. There was a security station approximately 145 feet away from the parking area. *Id.* at *3.

The court held that a security station removed from the parking lot entrance did not meet the statutory requirements. "[T]he term 'security station' must get its meaning from the 'gate' term it is associated with," and "[t]his means that for a security station to limit or restrict access to the employee parking area under § 45-9-55(2), it must limit or restrict access in a way similar to a gate." *Id.* The court determined this interpretation to be "consistent with the legislative intent of the statute to exempt private employers who gated or otherwise restricted access to their employees' parking area." *Id.* (citing *State Farm Ins. Co. v. Gay*, 526 So. 2d 534, 537 (Miss. 1988); Miss. Legislative Highlights, 2006 Sess.; Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012)). Similarly, signs restricting access did not satisfy the statute, because they did not constitute a physical barrier at the access points of the parking lot. *Id.* Once again, the statute "require[s] restricted or limited access to the lot, similar to that of a gate or of a security station." *Id.*

---

that question for the jury. The result may have been different if cross-motions had been presented, as in *Parker* and this case.

- 11 -

This Court agrees with *Parker's* interpretation of what § 45-9-55(2) requires exempting an employer from compliance with § 45-9-55(1). Accordingly, Ingalls' central security station and no trespassing signs do not constitute "other means of restricting or limiting general public access" onto its parking lots in accord with the statute. Ingalls' constant security patrols and closed-circuit monitoring of the parking areas also do not satisfy the statute; none of these security measures resemble a physical barrier at the access points of a parking lot.

Because Ingalls has failed to limit or restrict access to its employee parking lots in a manner consistent with § 45-9-55(2), it was not entitled to enforce its policy preventing Cherry from transporting his firearm in his vehicle as he drove to the parking lot. Ingalls' termination of Cherry's employment for transporting his firearm was wrongful. Ingalls' Motion for Summary Judgment will be denied on the issue of liability as to Cherry's claim of wrongful termination, and Cherry's Motion for Partial Summary Judgment will be granted.

2. <u>Breach of the CBA</u>

Ingalls moves for summary judgment on the plaintiff's claims that Ingalls breached the CBA by terminating Cherry's employment and declining to arbitrate this dispute. The parties agree that the CBA provides for arbitration of grievances the parties are unable to resolve. Ingalls contends, however, that a limitation on the arbitrator's power to interpret a statute foreclosed the possibility of arbitration in this case. The provision provides:

> The Arbitrator shall have no power to interpret any State or Federal statute when the compliance or noncompliance therewith shall be

> involved in the determination of a grievance. Any case appealed to the Arbitrator on which the Arbitrator has no power to rule shall be referred back to the parties without decision.

(Ingalls Mot. Ex. 9, at 3, ECF No. 44-9 (ECF pagination).) Because the Union asserted that Cherry's discharge violated § 45-9-55, Ingalls determined that the arbitrator would have no power to rule and declined to arbitrate.

The Union responds that "because of the legal and judicial effort expended thus far, Plaintiffs will not seek to compel arbitration of Cherry's termination." (Pls.' Resp. Mem. 4, ECF No. 47.) Thus the Union has withdrawn Count I of the Complaint requesting an order requiring Ingalls to arbitrate Cherry's termination. (Compl. 3-5, ECF No. 1.) Ingalls is entitled to summary judgment of this claim.

Count II of the Complaint alleges that Ingalls breached the CBA by terminating him without cause and in violation of Miss. Code § 45-9-55. Ingalls predicates its entitlement to summary judgment of this claim on its position that Cherry's termination was not wrongful because it was entitled to enforce its firearms policy. Because the Court has ruled differently, summary judgment in Ingalls' favor will be denied in regard to Count II.

3. <u>Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

Ingalls' moves for summary judgment on Cherry's claim for breach of the implied covenant of good faith and fair dealing on the basis that it did not violate § 45-9-55 in terminating him. Because the Court has ruled otherwise, Ingalls is not entitled to summary judgment of this claim.

4. Negligent Inflection of Emotional Distress

Ingalls moves for summary judgment of Cherry's claim for negligent infliction of emotional distress on the bases that 1) it did not violate § 45-9-55 in terminating him; and 2) it is immune from negligence suits by employees under the Mississippi workers compensation laws. The first basis is negated by the Court's holding above. Nevertheless, it is clear that claims for negligent infliction of emotional distress against one's employer "are barred by the Mississippi Workers' Compensation Law, Miss. Code §§ 71-3-1 and 71-3-9." *Walker v. Statewide Healthcare Servs., LLC*, No. 3:17-CV-1035-CWR-FKB, 2018 WL 2407651, at *2 (S.D. Miss. Mar. 26, 2018). Ingalls is entitled to summary judgment in regard to Cherry's claim for negligent infliction of emotional distress.

5. Punitive Damages

In determining whether the issue of punitive damages should be submitted to a jury, a trial court decides "whether, under the totality of the circumstances and viewing the defendant's conduct in the aggregate, a reasonable, hypothetical trier of fact could find either malice or gross neglect/reckless disregard." *Doe ex rel. Doe v. Salvation Army*, 835 So. 2d 76, 79 (Miss. 2003) (quotation omitted).

Cherry argues that there is evidence from which the jury could find that Ingalls' violation of § 45-9-55 was knowing and willful so as to justify punitive damages. Between the statute's enactment in 2006 and Cherry's termination in 2016, more than twenty-five employees had been terminated for violating Ingalls' firearms policy. Cherry argues that as a consequence Ingalls had many

4. Negligent Infliction of Emotional Distress

Ingalls moves for summary judgment of Cherry's claim for negligent infliction of emotional distress on the bases that 1) it did not violate § 45-9-55 in terminating him; and 2) it is immune from negligence suits by employees under the Mississippi workers compensation laws. The first basis is negated by the Court's holding above. Nevertheless, it is clear that claims for negligent infliction of emotional distress against one's employer "are barred by the Mississippi Workers' Compensation Law, Miss. Code §§ 71-3-1 and 71-3-9." *Walker v. Statewide Healthcare Servs., LLC*, No. 3:17-CV-1035-CWR-FKB, 2018 WL 2407651, at *2 (S.D. Miss. Mar. 26, 2018). Ingalls is entitled to summary judgment in regard to Cherry's claim for negligent infliction of emotional distress.

5. Punitive Damages

In determining whether the issue of punitive damages should be submitted to a jury, a trial court decides "whether, under the totality of the circumstances and viewing the defendant's conduct in the aggregate, a reasonable, hypothetical trier of fact could find either malice or gross neglect/reckless disregard." *Doe ex rel. Doe v. Salvation Army*, 835 So. 2d 76, 79 (Miss. 2003) (quotation omitted).

Cherry argues that there is evidence from which the jury could find that Ingalls' violation of § 45-9-55 was knowing and willful so as to justify punitive damages. Between the statute's enactment in 2006 and Cherry's termination in 2016, more than twenty-five employees had been terminated for violating Ingalls' firearms policy. Cherry argues that as a consequence Ingalls had many

opportunities to consider whether its policy complied with the statute. Further, applying rules of statutory interpretation should have led Ingalls to anticipate the holding in *Parker*, which issued while Cherry's request for arbitration was pending. Ingalls argues that the jury should not be allowed to consider the issue of punitive damages because 1) it adopted its firearm policy in good faith for the purpose of safety; 2) § 45-9-55 is not ambiguous and Ingalls did not violate it; 3) at the time of Cherry's termination the language of § 45-9-55(2) had not been construed in a way that would make Ingalls' method of restricting access inadequate; and 4) Ingalls relied on the advice given by its counsel after the Mississippi Supreme Court decided *Swindol*.

The Court is mindful that the recovery of punitive damages is disfavored and permitted only in extreme cases. *See Life & Cas. Ins. Co. of Tenn. v. Bristow,* 529 So. 2d 620, 622 (Miss. 1988) ("Mississippi law does not favor punitive damages; they are considered an extraordinary remedy and allowed with caution and within narrow limits."). There is no evidence here of malicious or reckless conduct of the part of Ingalls. The case law surrounding the application of § 45-9-55 is at best, unsettled and evolving. And the application of § 45-9-55 to the particular policy at issue here is open to reasonable debate, and/or review. Thus, this case does not justify the extraordinary remedy of punitive damages. Ingalls is entitled to summary judgment in regard to Cherry's claim for punitive damages.

6. <u>Back Pay After April 2017</u>

Ingalls moves for summary judgment to limit Cherry's claim for back pay, arguing that he was unable to work from April through October of 2017 because of injuries suffered in a car accident, and would have been laid off at the end of October 2017 with the other cablemen and not rehired in any event.

Cherry does not dispute that he cannot recover back pay for the six months he was unable to work in 2017. However, he argues there is a factual dispute regarding whether he could have been recalled to work in another craft. Cherry provides deposition testimony from the business manager of the Union that all cablemen "who wanted to" were placed in other crafts. (Mergenschoer Dep. 31-34, ECF No. 42-5.) Ingalls disputes the testimony, contending that Cherry was not eligible for employment in other departments, but could have applied for rehire in 2017. (Suppl. Frederic Decl. 1-2, ECF No. 52-4.) This factual dispute is for the jury to consider. Summary judgment in Ingalls' favor on the claim for back pay will be denied.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [42] Motion for Partial Summary Judgment filed by Plaintiff Jeremy Cherry is **GRANTED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the [44] Motion for Summary Judgment filed by Defendant Huntington Ingalls Inc. is **GRANTED IN PART AND DENIED IN PART** as set out above.

**SO ORDERED AND ADJUDGED** this the 2nd day of December, 2019.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE